UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL SONNER,

                        Plaintiff,

                                                                                                     DECISION AND ORDER

                                                                                                     05-CV-6218L

                            v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                        Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Michael E. Sonner ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to either Social Security Disability Insurance ("SSDI") benefits or Supplemental Security Income ("SSI"). The parties have filed cross-motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Dkts. #4, #6).

For the reasons discussed below, plaintiff's motion is granted, in part, the Commissioner's motion is denied, and the case is remanded for further administrative proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born May 2, 1977; at the time of his application he was 26 years old. (T. 101).[1] The administrative record indicates that by the age of 13, plaintiff was depressed; in addition to witnessing domestic violence, his 16-year-old sister had been killed in a motor vehicle accident. (T. 285, 314). Plaintiff was hospitalized after a "drinking episode" when he was 14 years of age, and he was terminated from the resulting in-patient treatment program because he threatened the staff. (T. 285). Plaintiff also spent 14 months at a counseling facility after being declared a person in need of supervision. (T. 314). Plaintiff attended special education classes at Watkins Glen High School because he was "emotionally disturbed," and he graduated when he was 18 years old. (T. 129, 190).

Plaintiff first visited the Elmwood Health Center on March 1, 2001, complaining of attention deficit hyperactivity disorder ("ADHD") and asthma. Staff internist Mark R. Zambron, M.D., subsequently treated plaintiff on ten occasions over the following three-year period. (T. 269-270, 273-282, 309, 331, 339, 354). Dr. Zambron's January 29, 2004 memorandum describes plaintiff as having a history of obesity, insomnia, questionable attention deficit disorder ("ADD") vs. generalized anxiety disorder vs. bipolar disorder, and alcohol abuse. (T. 269).

On July 21, 2004, Dr. Zambron completed a medical assessment of plaintiff's ability to do work-related mental activities. (T. 321-322). Dr. Zambron rated plaintiff's ability to perform 15 different work-related activities. In 10 of the 15 activities, including maintaining attention and concentration and following work rules, Dr. Zambron rated plaintiff's ability as "fair," which was defined on the assessment form as being "seriously limited, but not precluded." (T. 321-322).

---

[1] "T.___" refers to the page of the administrative transcript filed by the Commissioner.

On April 7, 2004, Social Security Administration ("SSA") review physician Zenaida Mata, M.D., completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. (T. 289-306). Dr. Mata indicated that plaintiff had a medically determinable impairment in the form of bipolar disorder, but that it did not precisely satisfy the diagnostic criteria of Listing 12.04 for Affective Disorders. (T. 296). Dr. Mata also evaluated the degree of the functional limitations imposed by plaintiff's mental impairments in the four areas of functioning, known as the "B" criteria.[2] Dr. Mata found that plaintiff had: (1) a mild degree of limitation upon his activities of daily living; (2) a moderate degree of limitation in maintaining social functioning; (3) a moderate degree of limitation in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of deterioration, each of extended duration. (T. 303).

On February 23, 2004, plaintiff's mental status was evaluated by Jed H. Weitzen, Ph.D. for the New York State Department of Temporary and Disability Assistance. (T. 284-288). Dr. Weitzen diagnosed plaintiff with probable bipolar disorder. He found that plaintiff was "a highly motivated young man who is interested in returning to work but because of his functional disorder has been unable to do so." He referred plaintiff to Schuyler County Mental Health Clinic for a medication trial and therapy. (T. 284-288).

In March 2004, plaintiff began treatment at the Schuyler County Mental Health Clinic. He began counseling sessions with staff social worker Amy Spenciner, L.M.S.W. (T. 314-315). Plaintiff was also seen for an outpatient Psychiatric Intake Assessment by staff psychiatrist Mihai Dascalu, M.D. (T. 316-319). Dr. Dascalu diagnosed plaintiff with bipolar disorder and developed a treatment

---

[2]The "B" criteria are so named because they appear in paragraph B of the listings of mental disorders at 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.

- 3 -

plan for him. (T. 312-313). On October 20, 2004, Dr. Dascalu and therapist Spenciner completed a New York State Department of Temporary and Disability Assistance Disability Determination assessment. (T. 362-364). At that time, plaintiff had attended three of four scheduled psychiatric appointments and five of eight scheduled counseling appointments over a four-month period. (T. 362). They concluded that plaintiff's "[u]nderstanding and memory" were "limited" and that he had "difficulty with appointments or even remembering information in a conversation." (T. 364).

Plaintiff filed amended applications for SSDI and SSI on February 9, 2004, alleging disability as of May 1, 2001 due to mental impairments including anxiety and depression. (T. 100). His applications were denied on April 13, 2004. (T. 73). After a timely request by plaintiff, a hearing was held on November 15, 2004, before Administrative Law Judge ("ALJ") John J. Mulrooney II. (T. 43). Plaintiff was represented by counsel and testified at the hearing; a vocational expert ("VE") also gave testimony. (T. 423-463). On December 7, 2004, the ALJ issued a decision finding that plaintiff was not disabled because he could perform a number of jobs existing in significant numbers in the national economy. (T. 51-52). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 4, 2005. (T. 5-7). This action followed.

## DISCUSSION

### I. Standard for Determining Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A);

1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation.[3] *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the person "'retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

---

[3] The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

## II. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987) ("Where there

is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

### III. The ALJ's Decision

The ALJ found that plaintiff had severe, medically determinable impairments, including lower back pain, obesity, ADHD, bipolar disorder, and a history of polysubstance abuse. (T. 45). At step three, the ALJ evaluated the degree of the functional limitations imposed by plaintiff's mental impairments as they pertain to the "B" criteria discussed, *supra*. The ALJ concluded that plaintiff had a "moderate" degree of limitation in his activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, and that he had one episode of decompensation during the relevant time period. (T. 47). As a result, the ALJ concluded that plaintiff's mental impairments neither met nor equaled the criteria of any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. (T. 45). At step four, the ALJ assigned and explained the weight he gave to medical opinions of record. (T. 48-50). He then concluded that plaintiff retained the residual functional capacity ("RFC") to do light work, but with certain non-exertional limitations. Specifically, plaintiff could only do light work that "involves no more than simple, routine, repetitive tasks, not performed in a production or quota based environment; only simple, work related decisions; relatively few work place changes; no more than occasional interaction with supervisors or coworkers and avoids all contact with the general public." (T. 49). With these limitations, the ALJ concluded that plaintiff could not return to his past relevant work as a lube service worker. (T. 49).

At step five the ALJ found that due to plaintiff's non-exertional limitations, the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpt. P, App. 2 did not apply, whereas they would ordinarily direct a finding of "not disabled." (T. 50). Having made that finding, the ALJ properly called a VE to testify. (T. 50). Based on testimony the VE gave in response to questions from the ALJ, the ALJ concluded at step five that plaintiff was not disabled because he could perform other jobs found in significant numbers within the national economy, including garment sorter, routing clerk, and classifier in a laundry. (T. 50-51).

## IV. Remand is Required

The Commissioner argues that substantial evidence in the record exists to support the ALJ's decision that plaintiff is able to perform other work in the national economy. Plaintiff, however, argues that the ALJ's decision is based upon legal error and is not supported by substantial evidence. I agree, in part, with plaintiff. I find that the ALJ erred in assessing the opinions of plaintiff's treating physicians and in assessing his RFC. I also find that substantial evidence does not support the ALJ's conclusion at step five that plaintiff can perform other work in the national economy. As a result, this case is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

It has long been recognized that the opinion of a treating physician is given controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa*, 168 F.3d at 78; *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Under the Commissioner's regulations, the ALJ must consider certain enumerated factors when assigning weight to the opinion of a treating source, including the length, nature and extent of the treatment relationship and the frequency of

examination.[4] 20 C.F.R. §§ 404.1527(d)(2)-(6); 416.927(d)(2)-(6); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw*, 221 F.3d at 134. Furthermore, the Commissioner's regulations require that the ALJ "always give good reasons" in his decision for the weight he assigns to the opinions of treating physicians. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). The ALJ's failure to explain why the opinions of plaintiff's treating physician were not given controlling weight is grounds for remand. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999).

Here, the ALJ addressed the weight he assigned to three opinions given by Dr. Zambron. (T. 48-49). The ALJ discounted the opinions from October 2002 and January 2004 as "too vague," and assigned them, respectively, "limited weight" and "little weight." (T. 48). In contrast, the ALJ assigned "some weight" to Dr. Zambron's July 2004 opinion, "because it is more detailed and more closely reflects the claimant's level of functioning, as described in Dr. Zambron's treatment notes." (T. 49). There is no explanation, however, as to why Dr. Zambron's July 2004 opinion was not given *controlling* weight. The ALJ's decision did not address the length of Dr. Zambron's treatment relationship with plaintiff, nor did it address the frequency of examinations or the nature and extent of the treatment relationship.

The failure to properly assess how much weight to give to Dr. Zambron's opinion was not harmless. At the hearing held November 15, 2004, plaintiff's counsel posed questions to the VE based on Dr. Zambron's medical opinion about plaintiff's functional limitations. (T. 457-462). The

---

[4] Other factors include whether relevant evidence supports the opinion, whether the opinion is consistent with the record as a whole, and whether the treating physician is a specialist. *Id.*

VE's response to counsel's questioning strongly suggests that plaintiff would not be able to sustain employment if he had difficulties in maintaining pace, persistence, or attendance to tasks while on the job. (T. 460-462). Specifically, the VE testified that "any time a person's ability to perform any of those sort of characteristics, pace, persistence, attendance, attendance to task, anytime that falls below the 80 percent threshold, it's not going to sustain employment." (T. 461).

Yet, Dr. Zambron found that plaintiff was "seriously limited" in his ability to maintain attention and concentration. (T. 321-322). In addition, the ALJ determined that, based on the medical evidence, plaintiff was "moderately" limited in his ability to maintain concentration, persistence, or pace. (T.47). One of the difficulties in this case (and many others) is the fact that the medical opinions of record do not use the same terminology regarding the degree of plaintiff's functional limitation. Some refer to plaintiff's "serious" inability to perform work-related functions, others use the words "fair" and "moderate." This is not unusual. However, in this particular case, it is critically important to a proper evaluation at step five, given the testimony of the VE. That is because it is difficult to discern whether the VE's testimony that an inability to attend to tasks, etc. less than "80 percent" of the time means that plaintiff in this case cannot sustain employment. In fact, when posing questions to the VE at the hearing, the ALJ interrupted plaintiff's attorney on more than one occasion because of concerns regarding the definition of "moderate," "occasional" or "fair." (T. 457-460).

The ALJ, however, never addressed this portion of the VE's testimony in his decision. It seems, based on his decision, that the ALJ did not find that plaintiff's limitations on concentration, persistence, or pace fell below the 80 percent threshold testified about by the VE. Nevertheless,

without any discussion of the basis for such a finding, the Court cannot determine whether such a conclusion is supported by substantial evidence.

In this respect, the testimony of the VE is not substantial evidence on which the ALJ can base his determination at step five that plaintiff can perform other work in the national economy. Although the ALJ elicited testimony from the VE that there were other jobs that the plaintiff could do that were consistent with plaintiff's RFC, neither the ALJ's RFC assessment nor his hypothetical question to the VE included plaintiff's limitations in concentration, persistence, or pace. This was error. *See Aubeuf v. Schweiker*, 649 F.2d 107 (2d Cir.1981) ("The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.").

Furthermore, the ALJ failed to specifically identify on what evidence he based his RFC assessment. This was also error. *See* Soc. Sec. Ruling 96-8p (1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). To the extent the ALJ based his RFC assessment on the opinion of Dr. Mata, a review physician who did not have access to later medical reports, that is insufficient. Dr. Mata did not have the benefit of reviewing Dr. Zambron's July 2004 opinion. As noted above, Dr. Zambron's opinion is that plaintiff has a number of limitations in his ability to perform certain work-related mental activities – limitations that were not addressed by the ALJ when he posed questions to the VE. This error further undermines the VE's testimony, which testimony was relied upon by the ALJ to conclude that plaintiff could perform other work.

"'[W]here there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" a remand to the Commissioner for further development of the evidence and proper application of the correct legal standards is required. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)); *see also Rosa*, 168 F.3d at 83. Here, the ALJ needs to reevaluate the opinions of plaintiff's treating physicians, clarify on what evidence plaintiff's RFC is based, and obtain the follow-up testimony of a VE regarding plaintiff's ability to perform other work in the national economy that is based on clear and thorough hypothetical questions that are consistent with all of plaintiff's limitations.

Having found that remand is required, the Court need not address the remaining issues raised by plaintiff in his appeal. Nevertheless, the Court notes two errors that should not be repeated on remand. First, the ALJ referred to Dr. Dascalu as a "treating physician" but he assigned the doctor's opinion only "some weight," not controlling weight. (T. 49). The only explanation given by the ALJ for assigning less than controlling weight is a reference to "Dr. Dascalu's notation that the claimant's substance abuse is a contributing factor to the more serious episodes of functional decline." (T. 49). This, however, is not a valid reason for denying the opinion of a treating physician controlling weight. Second, the ALJ's reliance on a notation concerning plaintiff's substance abuse indicates that the ALJ may have improperly analyzed whether drug addiction and alcoholism were contributing factors material to a finding of disability. It is error to make a finding of drug addiction and alcoholism without following the necessary legal analysis set forth in the Act and regulations.[5]

---

[5] Pursuant to 42 U.S.C. § 423(d)(2)(C), a person found to be disabled after employment of the five-step disability evaluation will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." However, this
(continued...)

## CONCLUSION

Plaintiff's motion (Dkt. #4) is granted, in part. The Commissioner's motion (Dkt. #6) is denied. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 9, 2007.

---

[5](...continued)
determination can only be made after the ALJ concludes that the claimant is disabled. The Commissioner is required to consider the effects of alcoholism or drug addiction throughout the disability evaluation process. If, considering those effects, a claimant is found to be disabled, then the Commissioner is required to consider whether claimant would still be disabled if she stopped using drugs and alcohol. 20 C.F.R. § 404.1535(b)(1).